**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:20-CV-03119-WJM

WESLEY NELSON, by a though his conservator and guardian, Amy Nelson,

    Plaintiff,

v.

TOYOTA MOTOR CORPORATION, a foreign corporation
TOYOTA MOTOR SALES, U.S.A., INC., a foreign corporation,

    Defendants.

---

**PLAINTIFF'S FIRST AMENDED COMPLAINT AND JURY DEMAND**

---

COMES NOW Plaintiff, WESLEY NELSON by a though his conservator and guardian Amy Nelson, and through his counsel, hereby submits his Complaint and Jury Demand against the Defendants, TOYOTA MOTOR CORPORATION and TOYOTA MOTOR SALES, U.S.A., INC. As grounds therefor, the Plaintiff states and alleges as follows:

### I.    PARTIES

1. Plaintiff, WESLEY NELSON, is a citizen of the State of Colorado and resident of Adams County, Colorado. His address is 5237 E 130th Circle, Thornton, CO 80241.

2. Defendant Toyota Motor Corporation (hereinafter referred to as "TMC") is a foreign corporation with its headquarters in Toyota, Japan with an address of a 1 Toyota-Cho Toyota City, Aichi Prefecture 471-8571 Japan. TMC is a multinational manufacturer of motor vehicles. At all relevant times, TMC has been in the business of designing, manufacturing,

1

testing, inspecting, marketing, selling, and distributing motor vehicles, including the 2017 RAV4 (VIN: JTMBFREV7HJ144540), which is the subject of this lawsuit.

3. Defendant, Toyota Motor Sales, U.S.A., Inc. (hereinafter referred to as "TMS"), is a corporation with its principal office at 6565 Headquarters Drive, Plano, Texas 75024. Defendant TMS has at all relevant times marketed and delivered Toyota products, including the 2017 RAV4 (VIN: JTMBFREV7HJ144540), at issue in this matter to Toyota authorized dealerships in Colorado. Customers are directed in the 2017 RAV4 Owner's Manual to direct any safety defect concerns to Toyota Motor Sales, U.S.A. Inc.

4. Defendants TMC and TMS are referred to herein collectively as "the Toyota Defendants or Defendants."

5. The Toyota Defendants have at all relevant times jointly coordinated and been responsible for the marketing of motor vehicles throughout the United States and the State of Colorado. As such, they authorized sales and services and conducted product safety recalls whenever they deemed these activities necessary and appropriate. These defendants have derived both direct and indirect financial profits from their respective activities in Colorado.

## II. JURISDICTION

6. The United States District Court for the District of Colorado has jurisdiction over Plaintiff's claim against the Defendants by virtue of 28 U.S.C. § 1332(a)(1)-(2), as this is a claim between citizens of a State and a citizen of a foreign state where the matter in controversy exceeds the sum or value of $75,000 exclusive of interest and costs.

## III. VENUE

7. The Defendants reside in the District of Colorado, as the term is defined in 28 U.S.C. § 1391(c) (for venue purposes, a corporation is deemed to reside in any judicial district in

which it is subject to personal jurisdiction at the time the action is commenced). Venue is therefore proper in the District of Colorado pursuant to 28 U.S.C. § 1391(a)(2). Alternatively, venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1391(a)(3).

## IV. GENERAL ALLEGATIONS

8. This is an action to recover compensatory damages pursuant to Colo. Rev. Stat. § 13-21-401 *et seq.* and negligence as more fully listed below.

9. TMC and TMS designed, manufactured, assembled, marketed, distributed, and/or sold the 2017 Toyota RAV4 VIN: JTMBFREV7HJ144540 ("the Subject Vehicle") for ultimate distribution, sale and use within the State of Colorado in the United States. The Subject Vehicle was manufactured on or around March 4, 2017.

10. Defendants are "manufacturers" as that term is used in Colo. Rev. Stat. § 13-21-401.

11. Defendants are "sellers" as that term is used in Colo. Rev. Stat. § 13-21-401

12. Dennis Bender, Plaintiff's grandfather, purchased the 2017 Toyota RAV4 LE, 4 Door Wagon/Sport Utility VIN: JTMBFREV7HJ144540 on or around June 6, 2017, from the Larry H. Miller Toyota dealership in the State of Colorado.

13. The Subject Vehicle came equipped with various safety features and electronics which are intended to make the operation of the vehicle safer for the occupants. This includes the Supplemental Restraint System (SRS system), which includes seatbelts, seatbelt pretensioners, and airbags.

14. A seatbelt effectively controls the movement of the occupants within the limited cabin space and is designed to reduce the impact on their bodies. Seatbelts are designed to maintain comfort during a normal drive but are designed to firmly restrain occupants during a collision.

3

15. Front Seatbelt Pretensioners instantaneously retract the seatbelts when a strong impact is sensed during a frontal collision and/or rollover, thereby quickly clinching the seatbelts. This technology is intended to make seatbelts more effective at restraining occupants during a crash.

16. The Subject Vehicle is equipped with front airbags, side airbags, and side curtain airbags. They are depicted in the vehicles Owner's Manual as follows:



17. The 2017 Toyota RAV4 Owner's Manual provides the following deployment conditions for the frontal impact airbags:

■ SRS airbag deployment conditions (SRS front airbags)
● The SRS front airbags will deploy in the event of an impact that exceeds the set threshold level (the level of force corresponding to an approximately 12 - 18 mph [20 - 30 km/h] frontal collision with a fixed wall that does not move or deform).
However, this threshold velocity will be considerably higher in the following situations:
• If the vehicle strikes an object, such as a parked vehicle or sign pole, which can move or deform on impact
• If the vehicle is involved in an underride collision, such as a collision in which the front of the vehicle "underrides", or goes under, the bed of a truck

18. Side curtain airbags have been shown to reduce head injuries and brain injuries. Inflatable side curtains can protect the head and prevent diffuse brain injures by protecting the head in a side-impact crash. Side curtain airbags reduce the occupant's chances of striking the interior of the vehicle or the ground during a rollover event.

19. The owner's manual includes the following deployment conditions for the side and side curtain airbags, which are intended to deploy in a side impact and severe frontal impacts and in rollover events.

■ SRS airbag deployment conditions (SRS side and curtain shield airbags)
● The SRS side and curtain shield airbags will deploy in the event of an impact that exceeds the set threshold level (the level of force corresponding to the impact force produced by an approximately 3300 lb. [1500 kg] vehicle colliding with the vehicle cabin from a direction perpendicular to the vehicle orientation at an approximate speed of 12 - 18 mph [20 - 30 km/h]).
● The SRS curtain shield airbags will deploy in the event of vehicle rollover.
● The SRS side and curtain shield airbags may also deploy in the event of a severe frontal collision.

20. The manual also indicates that a side curtain airbag may deploy if the vehicle experiences a tip-up or skids into a curb:

The SRS curtain shield airbags may also deploy under the situations shown in the illustration.
● The angle of vehicle tip-up is marginal
● The vehicle skids and hits a curb stone



IN11RV005a

21. Below is the description and flow chart from Toyota's service system description: The Airbag Sensor Assembly (ASA) contains a roll rate sensor that determines rotational speed and a second roll rate sensor that determines the inclination angle of the vehicle and a lateral deceleration sensor that determines the lateral force that is applied to the vehicle. These sensors detect the vehicle's roll angle (a), rotational speed (b), and lateral acceleration speed (c). Based on the information obtained from sensors, the airbag sensor makes an overall judgment of the vehicle's roll angle (a), rotational speed (b), and lateral acceleration speed (c). If the airbag sensor determines that the vehicle has rolled over due to cause other than the side collision, it deploys the right and left curtain shield airbag and the front right and left seat belt pretensioner.



22. Toyota has installed event data recorders (EDRs) in Toyota vehicles and, specifically, in the Subject Vehicle. Toyota Motor Corporation began the introduction of EDRs into its vehicles in August 2000. An event data recorder (EDR) records the vehicle status at the timing of a crash. The EDR is intended to record or document data such as vehicle speed, engine speed (rpm), accelerator angle, and brake application (whether the brake pedal was applied or not). Toyota EDRs are also intended to record additional data for accident analysis, including but not limited to: (1) pre-crash data, (2) side crash data, (3) rollover data, (4) pedestrian protection pop-up hood (PUH) data, and (5) vehicle control history (VCH) data from a non-crash triggered recording system.

23. Separate from the event data recorder (EDR), which records and stores data from qualifying vehicle crash events, the Vehicle Control History (VCH) on Toyota vehicles is intended to record and stores certain vehicle data based on select driver inputs, such as acceleration or braking, or upon the activation of certain vehicle dynamic control systems such as antilock braking system (ABS), traction control (TRAC), vehicle stability control (VSC), and the pre-collision system (PCS). The Subject Vehicle contained a VCH system.

24. The VCH is a function that records control data when triggered by specific vehicle behavior. The VCH data is recorded and stored in the Airbag Sensor Assembly (ASA), which is also commonly referred to as the Airbag Control Module (ACM) and/or Electrically Erasable Programmable Read-Only Memory (EEPROM).

25. On or about October 25, 2018, Wesley Nelson was a front-seat passenger in the Subject Vehicle. He was nineteen years old. He was properly seat belted. The vehicle was being operated by Dennis Bender.

26. On that same day, the Subject Vehicle was traveling eastbound on E. 168th Ave. The posted speed limit is 45 miles per hour. On or around 2:50 p.m. while traveling eastbound on E. 168th Ave., suddenly and unexpectedly, the operator Dennis Bender began to lose control of the vehicle. Plaintiff was on the telephone with his mother and reported that the driver was losing control of the vehicle.

27. As the Subject Vehicle continued to travel down the roadway at the previously stated location and time, it crossed over the center line and into the westbound lane. The Subject Vehicle traveled in the westbound lane for an unknown distance, then it traveled back into the eastbound lane and off the south side of the roadway. Subject Vehicle continued eastbound, down a small embankment, and collided with a utility pole. The collision caused Subject Vehicle to rotate clockwise and travel broadside. Subject Vehicle then rolled over three and a quarter times, coming to rest on its driver's side.



28. Subject Vehicle came to final rest facing west on its left side as depicted below:



29. Cecile Bender, the rear passenger, was ejected and killed. She was 72 years old at the time of her death. Her husband was Dennis Bender.

30. As the Subject Vehicle rolled, Plaintiff's head struck the passenger side glass and/or the ground resulting in a serious brain injury. The first responders represented some of the areas of Plaintiff's injures in their report, which is depicted in the areas in black:



Plaintiff's injuries are more fully set forth below.

31. A subsequent investigation by the Colorado State Patrol determined that the EDR failed to record data from the pole impact and subsequent rollover event. The ASA failed to operate as intended.

9

32. The Subject Vehicle's front airbags did not deploy in the event.

33. The Subject Vehicle's side-curtain airbags did not deploy in the event.

34. The Subject Vehicle's pretensioners did not activate during the event.

35. Based on Toyota's description of operation, the vehicle dynamics, and the damage to the vehicle, the side curtain airbags and front seatbelt pretensioners should have deployed as the passenger side tires began to lift at the beginning of the roll sequence. The rollover activated side curtain airbag and pretensioners would have prevented or reduced the severity of Plaintiff's injuries had they deployed properly during the event.

36. A review of the VCH data demonstrates that the Subject Vehicle was malfunctioning so that it was aggressively accelerating and/or not decelerating on its own for hundreds of feet. VCH recordings from the day of the crash record partial invalid data from the stability control units and ABS braking system consistent with a loss of communication. There were DTCs affecting the airbag control module. EDR did not record any of the frontal, side, or rollover events of the incident. VCH shows preexisting and current issues affecting the brake system reporting and behavior.

37. In summary, there was a vehicle malfunction that resulted in the loss of the control of the vehicle and the failure of the side curtain airbags and pretensioners to deploy in a rollover event. Upon information and belief, the ASA, EDR, Vehicle Stability Control Systems, communications networks, and the associated hardware and software, as well as the electrical system components did not operate as intended.

38. Toyota Defendants are not entitled to any of the protections afforded by Colorado Statutes in connection with Plaintiff's Complaint, including:

　　a. C.R.S. § 13-21-111.6 (collateral source);

　　b. C.R.S. § 13-21-111.7 (assumption of risk);

　　c. C.R.S. § 13-21-111.5 (several liability); and,

　　d. C.R.S. § 13-21-111.5 (responsible non-party).

39. As a direct and proximate result of the events described in the preceding paragraphs, Plaintiff suffered a severe brain injury, pulmonary contusions, and multiple lacerations. At the scene of the collision, his Glasgow Coma Scale was 3. In the emergency department he was unresponsive and presented with decorticated posturing. He was in intensive care for weeks until he was transferred to Craig Rehabilitation Center. He is currently 21 years old. His medical bills exceed $1,125,000.

40. As a direct and proximate result of the conduct of Defendants, Plaintiff has suffered personal injuries.  Plaintiff has suffered economic losses, including costs for hospitals, physicians, therapists, for medical and assisted care and other medical expenses and will, in the future, continue to incur such expenses.  Further, Plaintiff incurred a loss of wages and earning capacity. Plaintiff has also suffered non-economic losses such as physical, mental and emotional pain and suffering, emotional distress, inconvenience and impairment of the quality of life.  In addition, Plaintiff has been informed and alleges that his injuries are permanent and have resulted in a permanent physical impairment and permanent disfigurement.

## V.   FIRST CLAIM FOR RELIEF
### STRICT LIABILITY – TOYOTA DEFENDANTS

41. Plaintiff incorporates herein as more fully set forth in paragraphs 1 through 40.

42. At all times relevant, Defendants were engaged in the business of designing, manufacturing, assembling, selling, and distributing motor vehicles, including the Subject Vehicle. The ASA, EDR, Vehicle Stability Control Systems, communications networks, the associated hardware and software, and electrical system components are part of the Subject Vehicle and are critical to the safe operation and handling of the vehicle.

43. The Subject Vehicle contained no warning system to alert the user that certain safety systems were inoperable and notify the user to cease operation of the vehicle.

44. On October 25, 2018, the Subject Vehicle was being used by Plaintiff and Dennis Bender in a foreseeable manner.

45. At the time the Subject Vehicle left the control of Defendants, it was defective and unreasonably dangerous to a person who might reasonably be expected to use it. These defects include, but are not limited to, the conditions described in the following paragraphs.

46. The defects in design, manufacture, and inspection made the Subject Vehicle unreasonably dangerous, unfit and unsafe for its intended use and caused the vehicle mishandling, the failure of the EDR to record a crash event, the failure to deploy the side curtain airbags, and the failure of the pretensioners to perform as an ordinary user would expect when the Subject Vehicle was used in its intended and foreseeable manner.

47. The ASA, EDR, Vehicle Stability Control Systems, communications networks, the associated hardware and software, and electrical system components were manufactured by Defendants without adequate quality control measures and using inappropriate manufacturing

procedures. Such inappropriate quality control measures and inappropriate manufacturing practices and procedures contributed to the in-service failure of the ASA, EDR, Vehicle Stability Control Systems, communications networks, the associated hardware and software, and electrical system components on October 25, 2018.

48. The defects in the design, manufacture, inspection, and lack of warning of the ASA, EDR, Vehicle Stability Control Systems, communications networks, the associated hardware and software, and electrical system components were direct, proximate and producing causes which resulted in Plaintiff's suffering injuries, damages and losses as more fully set forth in paragraphs 39 and 40 of this Complaint.

## VI.   SECOND CLAIM FOR RELIEF
## NEGLIGENCE - DEFENDANTS

49. Plaintiff incorporates herein as if more fully set forth in paragraphs 1 through 48.

50. At all times material hereto, Defendants had a duty to use reasonable care in the design, manufacture, inspection, and sale of the Subject Vehicle, including the ASA, EDR, Vehicle Stability Control Systems, communications networks, and the associated hardware and software and electrical system components.

51. Defendants breached their duty of reasonable care owed to Plaintiff by:

   a. Negligently designing the ASA, EDR, Vehicle Stability Control Systems, communications networks, and the associated hardware and software and electrical system components;

   b. Negligently manufacturing the ASA, EDR, Vehicle Stability Control Systems, communications networks, and the associated hardware and software and electrical system components;

c. Negligently failing to properly inspect and detect and repair the defective ASA, EDR, Vehicle Stability Control Systems, communications networks, and the associated hardware and software and electrical system components;

d. Negligently testing or failing to test the Subject Vehicle's ASA, EDR, Vehicle Stability Control Systems, communications networks, and the associated hardware and software and electrical system components;

e. Negligently failing to warn Plaintiff or expected users of the Subject Vehicle of defects in the ASA, EDR, Vehicle Stability Control Systems, communications networks, and the associated hardware and software and electrical system components which Defendant either knew or should have known existed;

f. Failing to reasonably warn the consumers and expected users of the Subject Vehicle by way of a dashboard alert or otherwise that the ASA, EDR, Vehicle Stability Control Systems, communications networks, the associated hardware and software, and electrical system components were inoperable and not functioning correctly and that use of the vehicle should cease;

g. Conducting inadequate inspections at all phases of the manufacturing and fabrication of the ASA, EDR, Vehicle Stability Control Systems, communications networks, and the associated hardware and software and electrical system components; and

h. Failing to adequately test the ASA, EDR, Vehicle Stability Control Systems, communications networks, and the associated hardware and software and electrical system components to ensure that it could handle ordinary operating conditions or expected or anticipated operating conditions.

52. As a direct and proximate result of the negligence of Defendants, Plaintiff suffered injuries, damages and losses as more fully set forth in paragraphs 39 and 40 of this Complaint.

## VII.   JURY DEMAND

53. Plaintiff requests a trial by jury and has paid the required fee with this filing.

## Prayer

WHEREFORE, Plaintiff prays that Defendants be cited to appear and answer herein; that upon trial hereof, Plaintiff have a judgment of the Court against the Defendants together with pre-judgment and post-judgment interest as provided by applicable law.  Plaintiff further prays for all costs of court; and for all such other and further relief, both general and special, legal and equitable, to which he has shown or may show himself justly entitled.

Respectfully submitted this 20th day of October 2020,


s/ Michael O'B Keating
Michael O'B Keating, Atty. Reg. #33002
KEATING WAGNER POLIDORI FREE, P.C.
1290 Broadway, Suite 600,
Denver, CO 80203
Telephone:   (303) 534-0401
Facsimile:   (303) 534-8333
E-mail:  mkeating@keatingwagner.com


s/ W. Randolph Barnhart
W. Randolph Barnhart, Atty. Reg. #5186
KEATING WAGNER POLIDORI FREE, P.C.
1290 Broadway, Suite 600
Denver, CO  80203
Phone: 303-534-0401
Fax: 303-534-8333
wrb@keatingwagner.com

*s/ M. Alex Zimmerman*
M. Alex Zimmerman, Atty. Reg. #47432
HULL AND ZIMMERMAN, P.C.
11178 Huron Street, Suite 2
Northglenn, CO  80234
Phone: 303-423-1170
Fax: 303-423-2102
alex@hzinjurylaw.com

ATTORNEYS FOR PLAINTIFF
