IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang

Civil Action No. 20-cv-03119-NYW-KAS

WESLEY NELSON, by and through his conservator and guardian, AMY NELSON,

    Plaintiff,

v.

TOYOTA MOTOR CORPORATION, and
TOYOTA MOTOR SALES, U.S.A., INC.,

    Defendants.

## ORDER ON MOTION IN LIMINE

Pending before the Court is Defendants' Affirmative Motion in Limine Allowing Defendants to Admit Dennis Bender's Diabetic Medical Information at Trial ("Motion" or "Motion in Limine"), [Doc. 181, filed May 17, 2023], filed by Defendants Toyota Motor Corporation and Toyota Motor Sales, U.S.A., Inc. ("Defendants" or "Toyota Defendants"). Plaintiff Wesley Nelson ("Plaintiff" or "Mr. Nelson"), by and through his conservator and guardian, Amy Nelson ("Ms. Nelson"), has responded to the Motion ("Response"), [Doc. 188], and Defendants have submitted a Reply, [Doc. 193]. The Court has reviewed the briefing on the Motion and the applicable law, and concludes that oral argument would not materially assist in the resolution of this matter. For the reasons discussed below, the Court respectfully **GRANTS in part** and **DENIES in part** the Motion. The Court finds that some of the evidence at issue is relevant and admissible at trial as a general matter. The Court also respectfully **DENIES** Defendants' Motion Requesting Oral Argument on Their Affirmative Motion in Limine Allowing

Defendants to Admit Dennis Bender's Medical Information at Trial ("Motion for Oral Argument"), [Doc. 199, filed June 16, 2023].

## BACKGROUND

As discussed in the Court's April 18, 2023, Order on Motion for Partial Summary Judgment, Plaintiff, while a front-seat passenger in a 2017 Toyota RAV4 driven by his grandfather, Dennis Bender ("Mr. Bender"), suffered injuries in an October 25, 2018, motor vehicle accident in Adams County, Colorado, where the subject vehicle swerved out of its lane and hit a utility pole, rolling over several times. *See* [Doc. 177 at 1–2]. Mr. Bender survived the crash, but the other passenger, Plaintiff's grandmother Cecile Bender ("Ms. Bender"), died at the scene. *See* [*id.* at 2]. The vehicle's front airbags, side-curtain airbags, and seatbelt pretensioners did not deploy. *See* [*id.*].

Plaintiff filed this action in October 2020. [Doc. 1]. On January 18, 2022, Plaintiff filed a Third Amended Complaint and Jury Demand ("Third Amended Complaint") which states one claim for strict liability against the Toyota Defendants. [Doc. 80 at 11–12]. Specifically, Plaintiff alleges that "defects in design, manufacture, and inspection made the Subject Vehicle unreasonably dangerous, unfit and unsafe for its intended use and caused the the [sic] failure of the EDR[1] to record a crash event, the failure to deploy the side curtain airbags, and the failure of the pretensioners to perform as an ordinary user would expect when the Subject Vehicle was used in its intended and foreseeable manner." [*Id.* at ¶ 46]. Plaintiff further averred that "[t]he defects in the design, manufacture, inspection, and lack of warning of the ASA,[2] EDR, communications networks, the associated hardware and software, and electrical system components were direct,

---

[1] "EDR" refers to event data recorders installed in Toyota vehicles to record the vehicle status at the timing of a crash. [Doc. 80 at ¶ 22].

[2] "ASA" refers to the Airbag Sensor Assembly. [*Id.* at ¶ 21].

2

proximate and producing causes which resulted in Plaintiff's suffering injuries, damages and losses." [*Id.* at ¶ 47].

Shortly after the Court[3] docketed the Third Amended Complaint in January 2022, Defendants filed their Designation of Nonparties at Fault, which, among other things, outlined their position on Mr. Bender's role in the subject accident.[4] *See* [Doc. 85 at 2–4]. Defendants maintain that Mr. Bender failed to manage his diabetic condition, which contributed to the crash, as a factual matter, and which should result in a reduction in any recovery by Plaintiff based on Mr. Bender's degree of comparative fault, as a legal matter. *See* [Doc. 117 at 4 (Defendants stating in Final Pretrial Order their position that "[t]he subject accident and all resulting injuries resulted from the known, but poorly managed, diabetic condition of Dennis Bender")]; *see also* Colo. Rev. Stat. § 13-21-111.5. Defendants suggest that the vehicle's safety systems did not deploy because other occupants shifted the car into "Park" and turned off the ignition in an attempt to prevent the crash. *See, e.g.*, [Doc. 193 at 2].

Although Plaintiff agrees with the Toyota Defendants that Mr. Bender was negligent in operating the vehicle on the date of the accident, *see* [Doc. 188 at 3], the Parties represent that they are unable to stipulate to the percentage of his negligence. The Toyota Defendants stress that "it is their burden to demonstrate both the fact of [Mr. Bender's] negligence and the degree for purposes of apportioning fault," so they cannot agree to a stipulation of negligence. [Doc. 181 at

---

[3] Upon filing, this matter was assigned to the Honorable William J. Martínez. [Doc. 2]. The case was reassigned to the undersigned on August 5, 2022, upon her appointment as a United States District Judge. [Doc. 120].

[4] The Designation of Nonparties at Fault also assigned fault to Ms. Bender, Ms. Nelson, and Ms. Nelson's husband Bradley Nelson. [Doc. 85 at 5–6]. The Court's Order on Motion for Partial Summary Judgment concerned Plaintiff's attempt to strike those additional designations. *See* [Doc. 177 at 3]. Plaintiff has not challenged the designation of fault as to Mr. Bender. *See, e.g.*, [*id.* at 3 n.2].

3 (emphasis omitted)]. They also suggest that the proposed stipulation would not be proper because, in their view, it is contrary to record testimony by Mr. Bender. *See* [Doc. 193 at 4]. Consistent with the Court's direction, [Doc. 180], the Parties have briefed the admissibility of evidence related to Mr. Bender's diabetic condition for Defendants' case-in-chief.[5] The Motion in Limine is now ripe for decision, as is the Motion for Oral Argument.

## LEGAL STANDARD

Motions in limine exist outside of the Federal Rules of Civil Procedure and Federal Rules of Evidence and serve to enable the Court "to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *United States v. Cline*, 188 F. Supp. 2d 1287, 1291 (D. Kan. 2002) (quoting *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996)). Pretrial rulings issued in response

---

[5] Notwithstanding the extensive discussion of Mr. Bender's diabetic condition in unrestricted documents filed in this case and the centrality of the issue to this litigation, Defendants' publicly accessible briefing on the Motion in Limine redacts nearly every reference to Mr. Bender's diabetes, [Doc. 182; Doc. 194], Defendants' unredacted briefing is restricted, [Doc. 181; Doc. 193], and Plaintiff filed his Response under restriction, [Doc. 188]. Leave to restrict these filings was initially granted by the Honorable Kristen L. Mix. *See* [Doc. 198; Doc. 200]. However, the Court finds that the limitations on access to the briefing on the Motion in Limine are inconsistent with both the Parties' conduct throughout this litigation and the common-law right of access to judicial records, as premised on the recognition that public monitoring of the courts fosters important values such as respect for our judicial system. *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978). Indeed, the Parties' Joint Status Report Regarding Settlement, Number of Trial Days, and Oral Argument Hearing Concerning Mr. Bender's Prior Medical Condition, [Doc. 192], filed without restriction the same day as Defendants' Reply, expressly references the issues "whether Mr. Bender had <u>diabetes</u>, whether Mr. Bender controlled his <u>diabetes</u>, and whether Mr. Bender's uncontrolled <u>diabetes</u> led to (1) the subject crash and (2) someone turning the vehicle OFF at [sic] an attempt to stop it from crashing, rendering the airbags inoperable." [*Id.* at 2 (emphasis added)]. Further, Mr. Bender's diabetic condition was discussed extensively in the Court's prior Order on Motion for Partial Summary Judgment. *See generally* [Doc. 177]. It is therefore unclear why references to Mr. Bender's diabetic medical condition should be restricted, and the Court will not follow the Parties' lead in this Order. The Parties are accordingly **ORDERED** to **SHOW CAUSE** why the restricted briefing on the Motion in Limine, [Doc. 181; Doc. 188; Doc. 193], and any attachments, should not be unrestricted.

to motions in limine can save time during trial as well as cost and effort for the Parties as they prepare their cases. However, "a court is almost always better situated during the actual trial to assess the value and utility of evidence." *Koch v. Koch Indus., Inc.*, 2 F. Supp. 2d 1385, 1388 (D. Kan. 1998) (citing *Hawthorne Partners v. AT & T Techs., Inc.*, 831 F. Supp. 1398, 1400 (N.D. Ill. 1993) ("Unless evidence meets this high standard [of clearly inadmissible], evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context.")).

"The admission or exclusion of evidence lies within the sound discretion of the trial court." *Robinson v. Mo. Pac. R.R. Co.*, 16 F.3d 1083, 1086 (10th Cir. 1994); *see also United States v. Golden*, 671 F.2d 369, 371 (10th Cir. 1982) ("Trial judges have discretion to decide whether an adequate foundation has been laid for the admission of evidence."). Under Federal Rule of Evidence 401, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Relevant evidence is generally admissible but may be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "Irrelevant evidence is not admissible." Fed. R. Evid. 402. Under Rule 404(b), and subject to Rule 403 balancing, "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character," but such evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(1)–(2).

## ANALYSIS

The Parties group the evidence at issue into several categories, which the Court evaluates in turn: (1) Mr. Bender's diabetic medical information as relayed to third parties; (2) 911 calls related to Mr. Bender's diabetic history; and (3) medical records concerning Mr. Bender's diabetes. In the Toyota Defendants' view, all evidence of "Mr. Bender's history of uncontrolled diabetes" at issue in their Motion "goes directly to the Toyota Defendants' burden of proof" on their affirmative defense of Mr. Bender's negligence, rendering it "relevant and . . . not unfairly prejudicial." [Doc. 181 at 9, 11]. Specifically, they contend that

> [t]he exclusion of Mr. Bender's medical history would paint an incomplete and inaccurate picture for jurors, who will be tasked with deciding what caused Plaintiff's injuries—a defect in the vehicle (Plaintiff's position), or Mr. Bender's negligence in operating a moving vehicle even though he and his family knew he had a history of diabetes and prior diabetic episodes, which Mr. Bender failed to properly manage (the Toyota Defendants' position).

[*Id.* at 10].[6] Plaintiff concedes that evidence from the day of the crash is admissible, but he disagrees with respect to the relevance and prejudice of evidence of Mr. Bender's prior or later conduct. *See* [Doc. 188 at 3, 6–13]. In his view, "[t]his case is about the functionality of the occupant restraint system installed in the RAV4 and why it failed to deploy on the day of the crash," and not "why the vehicle left the roadway." [*Id.* at 14]. In Reply, Defendants continue to emphasize their "burden to prove Mr. Bender's negligence and degree of fault at trial." [Doc. 193 at 2 (emphasis and footnote omitted)].

Before turning to the Parties' arguments, this Court pauses to consider the issues that will be before the jury. To establish liability in this strict liability products liability case, Plaintiff will

---

[6] Although Defendants devote most of their Motion to refuting the applicability of evidentiary privileges to the evidence at issue, [Doc. 181 at 4–9], Plaintiff does not invoke any such privilege in the Response, *see generally* [Doc. 188], so the Court does not pass upon any issue related to privilege.

6

need to prove, *inter alia*, that the Toyota Defendants manufactured and sold the safety systems, including the pretensioner and airbags, that were allegedly defective and, because of the defect, the vehicle was unreasonably dangerous to Plaintiff. *See Union Supply Co. v. Pust*, 583 P.2d 276, 282 (Colo. 1978); *see also* CJI-Civ. 4th 14:3 (2023). The risk-benefit test is used to determine whether the product at issue is unreasonably dangerous. *See Walker v. Ford Motor Co.*, 406 P.3d 845, 849–50 (Colo. 2017). In weighing the risks versus the benefits of a product design, a jury may consider, among other things:

> (1) The usefulness and desirability of the product—its utility to the user and to the public as a whole.
>
> (2) The safety aspects of the product—the likelihood that it will cause injury and the probable seriousness of the injury.
>
> (3) The availability of the substitute product which would meet the same need and not be as unsafe.
>
> (4) The manufacturer's ability to eliminate the unsafe character of the product without impairing its usefulness or making it too expensive to maintain its utility.
>
> (5) The user's ability to avoid danger by the exercise of care in the use of the product.
>
> (6) The user's anticipated awareness of the dangers inherent in the product and their avoidability because of general public knowledge of the obvious condition of the product, or of the existence of suitable warnings or instructions.
>
> (7) The feasibility, on the part of the manufacturer, of spreading the loss by setting the price of the product or carrying liability insurance.

*See id.* at 850 n.5 (quotation omitted); *Armentrout v. FMC Corp.*, 842 P.2d 175, 184 (Colo. 1992).

In turn, Colo. Rev. Stat. § 13-21-111.5 provides that in civil actions, plaintiffs and defendants may designate nonparties as being wholly or partially at fault for the plaintiff's injuries, and authorizes the finder of fact to consider the percentage of a nonparty's negligence or fault in apportioning ultimate liability. *See Barton v. Adams Rental, Inc.*, 938 P.2d 532, 535 (Colo. 1997). To establish negligence, "a plaintiff must show a legal duty of care on the [nonparty's] part, breach

7

of that duty, injury to the plaintiff, and causation, *i.e.*, that the [nonparty's] breach caused the plaintiff's injury." *Longwolf v. Post*, No. 14-cv-01613-KMT, 2014 WL 5293448, at *1 (D. Colo. Oct. 16, 2014) (quoting *HealthONE v. Rodriguez ex rel. Rodriguez*, 50 P.3d 879, 888 (Colo. 2002)).

The Court now turns to the issues presented by the Parties in conjunction with the instant Motion in Limine.

I.   **Mr. Bender's Diabetic Medical Information as Relayed to Third Parties**

The first category of evidence at issue consists of "medical information that Mr. Bender relayed to third parties concerning his diabetic medical condition." [Doc. 181 at 3]. Drawing on this Court's partial summary judgment ruling, Plaintiff argues that, "[b]ecause no third parties, including Mr. Bender's family, owed Plaintiff a duty of care, such third parties' knowledge of Mr. Bender's diabetes is irrelevant to a determination of whether Mr. Bender was negligent on the day of the crash." [Doc. 188 at 7]. Plaintiff also suggests that "any evidence of third-party knowledge of Mr. Bender's diabetes carries the danger of misleading the jury, confusing the issues to be determined in an already complicated case and wasting precious time for an already lengthy trial." [*Id.*]. Defendants respond that "Mr. Bender's diabetic medical information relayed to third parties is relevant and demonstrates both Mr. Bender's negligence and the degree of his negligence for purposes of apportioning fault." [Doc. 193 at 7 (emphasis omitted)].

Consistent with its prior rulings, the Court respectfully concludes that information relayed to third parties about Mr. Bender's medical condition as of, and temporally proximate to, the October 25, 2018, collision is relevant and potentially admissible, subject to the applicable Federal

Rules of Evidence.[7]  The crux of Defendants' case is that Mr. Bender negligently contributed to the October 2018 crash in a manner that should affect any recovery by Plaintiff based on comparative fault principles and Defendants' affirmative defenses.  *See, e.g.*, [Doc. 117 at 4].  That approach to this litigation renders certain third-party evidence related to Mr. Bender's management of his condition relevant, under Rule 401.  For instance, statements regarding Mr. Bender having a diabetic low and losing control of the vehicle are relevant because they bear on the probability of facts that are highly consequential to the jury's assessment of the degree to which Mr. Bender is at fault for Plaintiff's injuries.  *See* Fed. R. Evid. 401; *see also United States v. McVeigh*, 153 F.3d 1166, 1190 (10th Cir. 1998) ("As for the degree of probative value required under Rule 401, the rule sets the bar very low.").  Indeed, Plaintiff concedes that "Defendants may certainly introduce evidence concerning Mr. Bender's management of diabetes and glucose levels on October 25, 2018, the day of the crash."  [Doc. 188 at 3].

In addition, third-party evidence about Mr. Bender's diabetic condition before October 25, 2018, could inform the jury as to the potential actions of other occupants of the vehicle during the October 25, 2018, collision.  This Court recognizes that Plaintiff's theory is that the safety components at issue—including the pretensioners and air bags—are intended to deploy regardless of the cause of the accident.  But Defendants have posited that some occupant of the vehicle may have attempted to inject Mr. Bender with insulin and/or turn off the ignition during the incident, which could have interfered with the deployment of the safety components at issue.  The Toyota Defendants may develop those theories with some prior medical information relayed to third parties about Mr. Bender's diabetes.

---

[7] Nothing in this Order may be construed as determining, in advance, that any particular information has been properly authenticated and/or is otherwise admissible.

Nevertheless, this Court acknowledges that there is a risk of misleading the jury, confusing the issues, or wasting time if too much emphasis is placed on Mr. Bender's diabetic condition when the safety mechanisms at issue are expected to deploy regardless of who or what caused the initial collision.  The Court finds that the risk of misleading the jury, confusing the issues, or wasting time, under Rule 403, in permitting Defendants to robustly present their principal defense in this matter, can only be assessed in the context of trial and the evidence proffered.  *See World Wide Ass'n of Specialty Programs v. Pure, Inc.*, 450 F.3d 1132, 1139 (10th Cir. 2006) ("In performing the 403 balancing, the court should give the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value." (quotation omitted)).

## II.     911 Calls Concerning Mr. Bender's Diabetic History

The 911 calls at issue can be divided into two subcategories: (1) four service calls made from Mr. Bender's residence in the months leading up to the crash; and (2) a call made by Ms. Nelson on June 9, 2021, nearly three years after the accident.  Defendants argue that "[t]hese calls will assist the jury in understanding the magnitude of Mr. Bender's health issues, his knowledge surrounding his health issues, and the fact that he decided to operate a motor vehicle anyway." [Doc. 193 at 7].  The Court respectfully concludes as follows.

### A.     Prior 911 Service Calls

Plaintiff argues that the prior calls should be excluded under Rule 404(b) as inadmissible propensity evidence because "Defendants would like to show that Mr. Bender had a propensity for negligently managing his diabetes and as such, negligently managed his diabetes on the day of the crash." [Doc. 188 at 8].  Defendants respond that they would admit these calls "for the proper purpose of showing that Mr. Bender made the conscience decision to negligently drive Plaintiff Nelson with knowledge that on several previous occasions Mr. Bender was not alert, did not

respond appropriately, and/or did not behave normally." [Doc. 193 at 8]. While Defendants argue that "Mr. Bender's diabetes does not nearly rise to the level of evidence whose probative value is substantially outweighed by the danger of unfair prejudice," [*id.* at 11], this Court respectfully disagrees that any "propensity for negligently managing his diabetes," [Doc. 188 at 8], is sufficiently probative to overcome the likely prejudice. Instead, this Court looks to whether the prior 911 calls are relevant to whether Mr. Bender acted negligently on October 25, 2018.

These calls were made between June 9, 2018, and October 10, 2018, all within a few months of the crash. *See* [Doc. 181-11 at 2, 5, 8, 12]. To the extent the evidence would be admitted for a permissible purpose, Plaintiff notes that only two of the call transcripts explicitly mention diabetes, and suggests the calls are "immaterial and unhelpful to determining and apportioning Mr. Bender's degree of fault on the day of the crash," as well as unfairly prejudicial, in part because they invite the jury's speculation. [Doc. 188 at 9–10 (footnote omitted)]. Upon examination of the various incident reports, this Court respectfully agrees. *See* [Doc. 181-11]. None of the incident reports refers to Mr. Bender's attempts to operate a vehicle while having a diabetic episode. Nor, as this Court has previously ruled, are they relevant to the extent that the Toyota Defendants seek to offer these calls to demonstrate that others, like Ms. Bender, Ms. Nelson, or Bradley Nelson, should have attempted to stop Mr. Bender from driving Mr. Nelson, an emancipated adult at the time of the collision. *See* [Doc. 177]. However, this Court will permit the Toyota Defendants to ask Mr. Bender if his diabetic condition resulted in 911 calls before the October 25, 2018 collision, and whether any such 911 calls involved his operation of a motor vehicle.

### B. Ms. Nelson's Post-Crash Call

On the 2021 call, Plaintiff argues that "any issues Mr. Bender experienced with his diabetes after the subject incident have no bearing on the issue of his negligence on the day of the crash, [so] any evidence associated with such is irrelevant and inadmissible." [Doc. 188 at 7–8]. Defendants respond that the 2021 call shows Mr. Bender's knowledge of his diabetic condition because it concerned his use of a glucose monitor, or may be used to impeach Ms. Nelson's statements that Mr. Bender has not used such a device. *See* [Doc. 193 at 9–10]. At this preliminary stage, the Court is disinclined to allow such post-incident information to be admitted for the purpose of establishing Mr. Bender's negligence on the date of the collision. Indeed, this Court is hard-pressed to see how a 911 call that occurred in 2021 could inform a factfinder as to the degree of Mr. Bender's negligence nearly three years prior in October 2018.

In so ruling, this Court does not necessarily preclude the Toyota Defendants from using these pre- and post-incident 911 calls for impeachment purposes. But any such use will be subject to the Federal Rules of Evidence, including but not limited to any authenticity requirements or hearsay objections.

### III. Mr. Bender's Medical Records Concerning Diabetic History

With respect to Mr. Bender's medical records, Plaintiff makes the same Rule 404(b) argument discussed above.[8] *See* [Doc. 188 at 12 ("Defendants improperly wish to support the assumption that because Mr. Bender was carelessly managing his diabetes on prior occasions, he must have acted in accordance with those prior occasions on the day of the crash.")]. In the

---

[8] Plaintiff's attempt to offer a favorable characterization of the medical records by stressing that no medical provider ever advised Mr. Bender against driving, *see* [*id.* at 11–12], goes to the evidence's weight, and does not bear on the threshold admissibility questions at issue in the Motion.

alternative, Plaintiff makes similar relevance and prejudice arguments, contending that the records only show that Mr. Bender experienced hypoglycemia, not that he "was instructed, or even on notice, not to drive," or "careless in the management of his diabetes"; and arguing that "Mr. Bender's prior medical records carry the unjustifiable risk that the jury will be misled to believe that Mr. Bender habitually neglected the management of his diabetes." *See* [*id.* at 13]. Defendants respond that "medically diagnosed ailments are not character traits," and the evidence at issue is not being offered as character evidence, so Rule 404(b) does not apply. [Doc. 193 at 5]. Alternatively, Defendants suggest that the evidence could be admitted to show knowledge. *See* [*id.* at 6–7]. Defendants also argue that the medical evidence is highly relevant, as it shows Mr. Bender's inability to manage his diabetes. [*Id.* at 13].

For the reasons discussed above, the Court finds (and Plaintiff does not appear to dispute) that the medical records from the date of the October 25, 2018, collision are admissible. In addition, even assuming Rule 404(b) is applicable, pre-October 2018 medical records may go to Mr. Bender's knowledge of his condition, which informs the jury's assessment of the degree of his culpability. The Court agrees with Defendants that, upon considering the medical records, a jury may be more likely to find Mr. Bender responsible for the accident, to a greater degree than they would have without the evidence, on a theory that "[a] reasonable person who had . . . four separate doctor's visits within four months of the subject crash would have avoided driving, avoided driving with other people in the vehicle and/or would have taken greater measures to ensure he would not experience a diabetic low while driving." [*Id.* at 12]. As with most evidence of Mr. Bender's knowledge and management of his diabetic condition discussed in this Order, this Court must reserve the issue of whether the evidence is sufficiently probative to overcome any prejudice under Rule 403.

13

## CONCLUSION

Accordingly, **IT IS ORDERED** that:

(1)     Defendants' Affirmative Motion in Limine Allowing Defendants to Admit Dennis Bender's Diabetic Medical Information at Trial [Doc. 181] is **GRANTED in part and DENIED in part**;

(2)     Defendants' Motion Requesting Oral Argument on Their Affirmative Motion in Limine Allowing Defendants to Admit Dennis Bender's Medical Information at Trial [Doc. 199] is **DENIED**;

(3)     The Parties are **ORDERED** to **SHOW CAUSE** on or before **September 29, 2023**, why the Court should not unrestrict the restricted docket entries, [Doc. 181; Doc. 188; Doc. 193], and their supporting exhibits; and

(4)     A Telephonic Status Conference is **SET** for **September 27, 2023**, at **10:00 a.m.**, for the purpose of setting a Final Pretrial/Trial Preparation Conference and trial in this matter.  The Parties shall participate using the following dial-in information: 888-363-4749; Access Code: 5738976#.

DATED:  September 12, 2023                    BY THE COURT:

_____
Nina Y. Wang
United States District Judge