IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-03119-NYW-KAS

WESLEY NELSON, by and through his conservator and guardian, Amy Nelson,

    Plaintiff,

v.

TOYOTA MOTOR CORPORATION,

    Defendant.

---

## MINUTE ORDER

**Entered by Judge Nina Y. Wang**

    Pending before the Court is Plaintiff's Motion for Reconsideration or, in the Alternative, to Certify Interlocutory Appeal and Stay Proceedings (the "Motion" or "Motion for Reconsideration"), filed by Plaintiff Wesley Nelson ("Plaintiff" or "Mr. Nelson"). [Doc. 268, filed July 26, 2024]. For the reasons that follow, the Motion for Reconsideration is respectfully **DENIED**. However, the Court takes this opportunity to clarify its previous ruling.

I.    **Background**

    On July 11, 2024, this Court entered its Order on Rule 702 Motions. [Doc. 260]. As relevant here, that Order granted in part and denied in part Toyota Motor Corporation's Motion to Exclude Plaintiff's Vehicle Electro-Mechanical Systems[] Expert Peter J. Sullivan Under Fed. R. Evid. 702, which had been filed by Defendant Toyota Motor Corporation ("Defendant" or "TMC"). [Doc. 214]. Specifically, the Court explained that it agreed with TMC that the "intermittent power loss defect theory" offered by Plaintiff's expert witness Peter J. Sullivan ("Mr. Sullivan") was unreliable under the Federal Rules of Evidence because, even if Mr. Sullivan ruled out other explanations for the power loss in the subject vehicle's Airbag Control Module ("ACM") that prevented airbag deployment during the crash sequence, he had not provided sufficient support for the existence of <u>intermittent</u> power faults leading up to the crash, nor an explanation for what exactly caused the recurrent electrical failures he hypothesized. *See* [Doc. 260 at 13–19]. Importantly, the Court's analysis was cabined:

> Defendant has not questioned Mr. Sullivan's ability to testify as to his opinion that the ACM failure was not attributable to occupant interference, or as to the various inputs he uncovered in the course of his investigation, such as the trip counts and diagnostic codes. *Cf. Taylor v. Cooper Tire &*

> *Rubber Co.*, 130 F.3d 1395, 1398 (10th Cir. 1997) ("It is clear that in many states circumstantial evidence, whether expert or not, may support a manufacturing defect claim."); *Weir v. Fed. Ins. Co.*, 811 F.2d 1387, 1392 (10th Cir. 1987) ("The inference of a defect is permissible whenever the plaintiff has introduced evidence that would exclude other causes of the accident."). <u>Instead, this Rule 702 dispute concerns Mr. Sullivan's opinion that the subject vehicle was suffering random power losses leading up to the crash sequence attributable to a manufacturing defect</u>, *see, e.g.*, [Doc. 214-9 at 46], and that one such power loss prevented the airbags from activating upon impact during the instant crash, [*id.* at 49].

[Doc. 260 at 14 (emphasis added)].

On July 26, 2024, Plaintiff filed the Motion for Reconsideration. A three-week trial in this matter is set to begin on September 3, 2024. [Doc. 207]. Based on the proximity of the trial setting, the Court ordered an expedited briefing schedule. [Doc. 269]. Defendant has responded to the Motion for Reconsideration, [Doc. 272], and Plaintiff has replied, [Doc. 273].

## II.   Legal Standard

The Federal Rules of Civil Procedure do not expressly contemplate motions for reconsideration. *See Hatfield v. Bd. of Cnty. Comm'rs*, 52 F.3d 858, 861 (10th Cir. 1995). As a general principle, courts grant motions to reconsider where there is "(1) an intervening change in the controlling law, (2) new evidence previously unavailable, [or] (3) the need to correct clear error or prevent manifest injustice." *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). "Motions to reconsider are generally an inappropriate vehicle to advance 'new arguments, or supporting facts which were available at the time of the original motion.'" *Spring Creek Expl. & Prod. Co., LLC v. Hess Bakken Inv. II*, LLC, No. 14-cv-00134-PAB-KMT, 2015 WL 3542699, at *2 (D. Colo. June 5, 2015) (quoting *Servants of the Paraclete*, 204 F.3d at 1012). And "[t]he Tenth Circuit has made it abundantly clear that a motion for reconsideration is not a vehicle for a losing party to revisit issues already addressed." *Seabron v. Am. Fam. Mut. Ins. Co.*, No. 11-cv-01096-WJM-KMT, 2012 WL 3028224, at *1 (D. Colo. July 24, 2012) (citing *Servants of the Paraclete*, 204 F.3d at 1012). "[T]he decision to grant reconsideration is committed to the sound discretion of the district court." *Brumark Corp. v. Samson Res. Corp.*, 57 F.3d 941, 944 (10th Cir. 1995).

## III.   Discussion

***Reconsideration.***   Respectfully, a lack of precision as to the Parties' basic litigating positions has impeded this case's progress. At the Final Pretrial/Trial Preparation Conference, Plaintiff informed the Court—for the first time—that he did not intend to pursue a theory of defective design. [Doc. 256 at 3:12–22]. Rather, Plaintiff indicated that he would only pursue a claim based on a manufacturing defect. [*Id.*]. When pressed on the exact theory of liability, his counsel demurred. [*Id.* at 4:1–13]. The Parties were then required to resubmit their proposed final jury instructions based on the

2

confusion about whether Plaintiff intended to show a manufacturing defect or a design defect at trial—a fundamental aspect of any products liability case.  *See* [*id.* at 48:22–50:4].  Around the same time, the Court granted the Parties leave to brief an additional motion in limine covering a specific matter identified as Special Issue 5 in the proposed Final Pretrial Order and discussed at the Final Pretrial/Trial Preparation Conference.  [Doc. 249 at 16–17; Doc. 256 at 24:7–29:14].  Presumably, Special Issue 5 was subject to meaningful conferral prior to the filing of the proposed Final Pretrial Order.  However, the briefing rendered the dispute unrecognizable:  Plaintiff's motion sought to bar an evidentiary use which Defendant's response instantly disclaimed in favor of a position which Defendant subsequently abandoned upon Court-ordered conferral with Plaintiff.  *See* [Doc. 253; Doc. 259; Doc. 262; Doc. 265; Doc. 266].  Nevertheless, this Court has attempted to discern the Parties' respective positions amid these shifting sands.

Plaintiff's Motion for Reconsideration underscores the challenges faced by this Court in resolving disputes that are not well framed.[1]  The Motion for Reconsideration shifts the focus from Mr. Sullivan's opinions (1) offering a direct opinion about <u>the</u> defect that caused the ACM failure to (2) offering an indirect opinion, based on circumstantial

---

[1] The Court has reviewed the Motion's miscellaneous contentions sorted under the heading "The July 11, 2024 Order Misapprehends the Facts" and finds that none merits reconsideration.  *See* [Doc. 268 at 5–7].  Indeed, the Court agrees with all of them and finds that its Order on Rule 702 Motions was consistent with all of them.  First, Plaintiff notes that "it's undisputed that the RAV4's ACM lost power during the crash."  [*Id.* at 5].  The Court recognized as much in the Order on Rule 702 Motions.  *See* [Doc. 260 at 13 ("The Parties seem to agree that, during the accident, a power interruption affected the Airbag Control Module ('ACM'), causing the nondeployment of the airbags during the crash sequence.")].  Second, Plaintiff contends that, "contrary to the Court's assumption in excluding Mr. Sullivan's opinions, there are no probable sources of the ACM's power failure other than the two competing theories advanced by the parties' experts."  [Doc. 268 at 5]; *see also* [Doc. 273 at 1 ("[T]he Court excluded Mr. Sullivan's opinions as unreliable because he allegedly failed to eliminate other possible sources of the RAV4's ACM power failure.")].  But the Court assumed nothing of the sort.  *See* [Doc. 260 at 13–19].  Instead, the Court required Plaintiff to demonstrate that Mr. Sullivan's "intermittent power loss defect theory" was highly probable because, while offered at a high level of generality, it appeared to get at the nature of a defect that could have caused the ACM failure.  [*Id.*].  Third, Plaintiff stresses that Mr. Sullivan "eliminated as improbable" Defendant's occupant-interference theory.  [Doc. 268 at 6].  But the Court expressly stated that "Defendant [had] not questioned Mr. Sullivan's ability to testify as to his opinion that the ACM failure was not attributable to occupant interference."  [Doc. 260 at 14].  Finally, Plaintiff faults the Court for observing that Mr. Sullivan failed to inspect the vehicle's electrical systems when those systems were damaged in the crash.  *See* [Doc. 268 at 6–7].  That failure remains critical to why the Court deemed the intermittent power failure theory to be unreliable but, if anything, it supports the jury's ability to infer the existence of a defect in this case.  *Cf.* [Doc. 272 at 11 (TMC acknowledging that "most of the cases that have applied [Restatement (Third) of Torts § 3] involve products that were lost or destroyed")].

3

evidence, that a defect caused the ACM failure.  The Court excluded the former in the Order on Rule 702 Motions and does not see grounds for disturbing that determination.  But now that Plaintiff has made clear that he seeks to focus on the latter at trial, the Court clarifies that such an opinion about an indirect inference based on circumstantial evidence is not prohibited by the Order on Rule 702 Motions.

The briefing on the original motion with respect to Mr. Sullivan suggested that Plaintiff intended Mr. Sullivan to offer a specific opinion about a defect that, in his view, directly caused the airbags not to deploy:  intermittent power failures in the ACM.  *See, e.g.*, [Doc. 219 at 2–3 (noting that Mr. Sullivan "will testify that the subject RAV4's ACM was experiencing intermittent power faults in the period leading up to, and including, the October 25, 2018, crash")].  As this opinion was both attacked and defended at a relatively high level of generality—"intermittent power faults"—which lacked a reliable basis in testing and observation, the Court found that the opinion was inadmissible as expert causation evidence.  In other words, the briefing suggested that Plaintiff wanted to introduce *direct* evidence of a defective condition in the subject vehicle characterized by intermittent power faults through Mr. Sullivan's opinions.

Now, however, the briefing on the Motion for Reconsideration suggests that Plaintiff intends that Mr. Sullivan's testimony be used to assist the jury in inferring the existence of some indeterminate and unknown defect in the subject vehicle based on circumstantial evidence.  In other words, Plaintiff seeks to show, indirectly and circumstantially, that a defect caused the power failure which led to the nondeployment of the airbags during the crash sequence, because Defendant's alternative explanation is not persuasive, and no other explanations exist.

The Court agrees with Plaintiff that, at trial, the jury may properly infer the existence of a defect in the subject vehicle based on circumstantial evidence under the procedures outlined in the Restatement (Third) of Torts § 3.  *See* [Doc. 260 at 14]; *see also, e.g.*, *Olivero v. Trek Bicycle Corp.*, 291 F. Supp. 3d 1209, 1218–23 (D. Colo. 2017).  This is particularly so where the product at issue is not amenable to examination because of its substantial destruction during the crash sequence.[2]  As applied to this case, the Court finds that Mr. Sullivan may assist the jury in reaching the inference of a defect by sharing that he has reached that same inference after excluding Defendant's occupant-interference hypothesis.  As Plaintiff stresses, "if the jury rejects Toyota's ignition theory then it remains unavoidable that the RAV4 malfunctioned."  [Doc. 273 at 2 (emphasis omitted)].  The Court agrees.

The Court clarifies its ruling as to Mr. Sullivan as follows:  Mr. Sullivan may testify about how he has ruled out every cause of the ACM's electrical failure other than a defect, but he must frame his opinion as an inference based solely on circumstantial evidence.  As discussed in the Court's Order on Rule 702 Motions, Mr. Sullivan may not indicate that, based on his testing and experience, the "intermittent power loss defect theory" was

---

[2] Defendant suggests that the vehicle was not destroyed, but the Court credits Mr. Sullivan's testimony that its electrical components were "catastrophically damaged" in the crash.  *Compare* [Doc. 268 at 6–7], *with* [Doc. 272 at 11].

4

the likely direct cause of the power failure or that the vehicle was experiencing intermittent electrical failures in the period leading up to the crash, nor may he testify about any other particular defective condition directly causing the power failure.

In sum, the Court's analysis in the Order on Rule 702 Motions proceeded from the understanding, supported by Plaintiff's briefing, that Mr. Sullivan would offer a *positive explanation* for the electrical failure based on the vehicle experiencing intermittent power faults due to a defect. Such testimony will not be permitted. But Mr. Sullivan may testify that he has ruled out any cause of the power failure that led to the nondeployment of the airbags other than a defect, which has led him to infer that the ACM was defective.[3]

***Interlocutory Appeal.*** The Motion for Reconsideration contains an alternative request that this Court certify its Order on Rule 702 Motions for interlocutory appeal under 28 U.S.C. § 1292(b). *See* [Doc. 268 at 11–15]. However, based on this Court clarifying that Plaintiff may ask the jury to infer a defect at trial, and that Plaintiff may rely upon Mr. Sullivan's expert opinions to do so, this aspect of the Motion appears moot. Should Plaintiff disagree with the Court's assessment, he may renew his request.

Finally, the Court urges the Parties to distill any dispute to be presented to the Court during trial through a robust meet-and-confer whenever possible. Such a procedure will assist with judicial economy and respect the jury's time.

Accordingly, **IT IS ORDERED** that:

(1) Plaintiff's Motion for Reconsideration or, in the Alternative, to Certify Interlocutory Appeal and Stay Proceedings [Doc. 268] is **DENIED**.

DATED: August 9, 2024

---

[3] As to TMC's other contentions with respect to Mr. Sullivan's opinions, *see generally* [Doc. 272], a response to a motion for reconsideration is not the vehicle to raise arguments required to have been made in briefing Rule 702 motions.