## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cv-03119-NYW-KAS

WESLEY NELSON, by and through his conservator and
guardian, Amy Nelson,

                Plaintiff,

v.

TOYOTA MOTOR CORPORATION,

                Defendant.

---

## TOYOTA MOTOR CORPORATION'S MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO FED. R. CIV. P. 50(a)(1)

---

Toyota Motor Corporation ("Toyota") submits this Motion for Judgment as a Matter of Law Pursuant to Federal Rule of Civil Procedure 50(a)(1):

### I.      INTRODUCTION

This case arises from an October 25, 2018 motor vehicle accident after Dennis Bender suffered a diabetic episode while driving his 2017 Toyota RAV4, causing it to veer into oncoming traffic, swerve back into the correct lane of travel, exit the roadway, travel down an embankment into a ditch, strike a utility pole, and roll three and one quarter times. Plaintiff Wesley Nelson was riding in the front passenger seat at the time of the accident. Now, Mr. Nelson argues that a manufacturing defect in the RAV4 caused or contributed to his injuries. Plaintiff makes this argument despite the undisputed fact that he has not, and cannot, point to a specific defect in the vehicle. Instead, Plaintiff asks this Court to allow the jury to rely on the Restatement (Third) of Torts §3, to "infer" the existence of a defect based upon circumstantial evidence.

Despite presenting 12 witnesses[1] over 6 days, Plaintiff failed to establish each element of his claim by a preponderance of the evidence. Put another way, there is no legally sufficient evidentiary basis for a jury to find in Mr. Nelson's favor. For that reason, more fully described herein, this Motion for Judgment as a Matter of Law should be granted.

## II.    LEGAL STANDARD

A motion under FED. R. CIV. P. 50(a)(1) asks this Court to determine whether a jury would "have a legally sufficient evidentiary basis to find for" Plaintiff. Rule 50(a)(1) of the Federal Rules of Civil Procedure provides:

> (1) In General. If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may: (A) resolve the issue against the party; and (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

A motion for judgment under Rule 50(a)(1) may be made at any time before the case is submitted to the jury. FED. R. CIV. P. 50(a)(2). In evaluating a defendant's Rule 50(a) motion, the Court is required to consider all the evidence presented at trial, and must review the record "taken as a whole." *Reeves v. Sanderson*, 530 U.S. 133, 150

---

[1] **Jodie Immell** [Trial Transcript (Day 2) at 71:8-188:19], **Paul Lewis** [Trial Transcript (Day 2) at 189:4-216:6; Trial Transcript (Day 3) 4:23-87:12], **Peter Sullivan** [Trial Transcript (Day 3) at 89:8-237:17; Trial Transcript (Day 4) 3:4-72:2], **Timothy Harp** [Trial Transcript (Day 4) at 72:21-94:22], **Suk Jae Ham** [not transcribed], **Bradley Nelson** [Trial Transcript (Day 4) at 99:11-166:18], **Eric Spier, M.D.** [Trial Transcript (Day 5) at 16:4-90:15]; **Laura Woodard** [Trial Transcript (Day 5) at 90:21-155:22]; **Jeffrey Nehls** [Trial Transcript (Day 5) at 156:2-188:6]; **Amy Nelson** [Trial Transcript (Day 5) at 188:6-257:12]; **Whitney Nelson** [Trial Day 6; *based on Plaintiff's order of proof*]; **Wesley Nelson** [Trial Day 6; *based on Plaintiff's order of proof*].

(2000). "[T]he court must draw all reasonable inferences in favor of the nonmoving party and it may not make credibility determinations or weigh the evidence." *Id.* at 150.

"Thus, although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe." *Romero v. Helmerich & Payne Int'l Drilling Co.*, No. 15-CV-00720-NYW, 2017 WL 3608194, at *2 (D. Colo. Aug. 22, 2017). That is, the Court should give credence to the evidence favoring the nonmovant as well as that "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that the evidence comes from disinterested witnesses." *Reeves*, 530 U.S. at 151 (quoting 9A C. Wright & A. Miller, FEDERAL PRACTICE AND PROCEDURE, § 2529, p. 300 (2d ed. 1995)). In sum, the "standard for granting summary judgment mirrors the standard for judgment as a matter of law, such that the 'inquiry under each is the same.'" *Reeves*, 530 U.S. at 150 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 250–251). The court may grant the motion only if the evidence points but one way and is susceptible to no reasonable inferences which may support the opposing party's position. *Bristol v. Board of County Commissioners of County of Clear Creek*, 281 F.3d 1148, 1161 (10th Cir. 2002).

III.    **ARGUMENT**

Under Colorado law, a plaintiff may assert a strict product liability claim based upon a "manufacturing defect, a design defect or a failure to warn." *Camacho v. Honda Motor Co.*, 741 P.2d 1240, 1247 (Colo. 1987). "The question in manufacturing defect cases is whether the product as produced conformed with the manufacturer's specifications." *Id.* If a plaintiff lacks "proof of a specific defect," he may present "a circumstantial manufacturing defect case . . . if [he] can prove that the harm-causing incident (a) was of

a kind that ordinarily occurs as a result of product defect, and (b) was not, in the particular case, solely the result of causes other than product defect existing at the time of sale or distribution." *Olivero v. Trek Bicycle Corp.*, 291 F. Supp. 3d 1209, 1223-24 (D. Colo. 2017) (internal quotations omitted).

Here, it is undisputed that Plaintiff alleges a claim for manufacturing defect only, which requires Plaintiff to prove the following by a preponderance of the evidence: (1) The 2017 Toyota RAV4 operated by Mr. Bender was defective and, because of the defect, the 2017 Toyota RAV4 operated by Mr. Bender was unreasonably dangerous to a person who might reasonably be expected to use, or be affected by the 2017 Toyota RAV4 operated by Mr. Bender; (2) The 2017 Toyota RAV4 operated by Mr. Bender was defective at the time it was manufactured by the defendant or left its control; (3) The plaintiff had injuries, damages or losses; <u>and</u> (4) The defect in the 2017 Toyota RAV4 operated by Mr. Bender was a cause of the Plaintiff's injuries, damages, or losses. Colo. J.I. 3:1; Colo. J.I. 14:1. Because Plaintiff cannot prove each of these elements, his claim fails as a matter of law.

      a.  <u>There is No Evidence that the 2017 RAV4 was Defective and Unreasonably Dangerous.</u>

It is undisputed that Plaintiff has not identified a specific defect in the RAV4.[2] Instead, Plaintiff asks this Court to apply the Restatement (Third) of Torts: Prod. Liab. § 3 (hereinafter, "Restatement (Third) § 3"), which would allow the jury to infer the existence of a defect based upon circumstantial evidence.[3] The Restatement (Third) § 3 has never

---

[2] Sullivan Trial Tr., 09/05/2024 (Day 3) at 187:3-6; Lewis Trial Tr., 09/05/2024 (Day 3) at 40:22-24, 44:3-13.

[3] During trial on September 5, 2024, in ruling on Toyota's objection to Mr. Sullivan's testimony, the Court stated that Toyota did not object to the application of Malfunction Theory in its Response to Plaintiff's Motion to Reconsider, found at Dkt. 272. [Trial Transcript 09/05/2024 (Day 3) at

been expressly adopted by the Colorado Supreme Court and has been applied in this District in only one case, following a detailed factual analysis. *See, generally, Olivero*, 291 F. Supp. 3d 1209. Whether or not to permit the inference of defect based upon circumstantial evidence, without a specific analysis of Restatement (Third) § 3, has been the subject of five additional cases. *See Heikkila v. Kahr Firearms Grp.*, No. 1:20-CV-02705-MDB, 2023 WL 2375082, at *3 (D. Colo. Mar. 6, 2023)(acknowledging that the district court did not apply the malfunction theory but noting that, if it had, it would not have been in error)*; Hauck v. Michelin N. Am., Inc.*, 343 F. Supp. 2d 976, 987 (D. Colo. 2004) (disallowing circumstantial evidence where the only evidence of defect was "the plain fact that the tire failed"); *Oja v. Howmedica, Inc.*, 111 F.3d 782, 792 (10th Cir. 1997) (allowing circumstantial evidence because the subject product was "completely missing"); *Weir v. Fed. Ins. Co.*, 811 F.2d 1387, 1392 (10th Cir. 1987)("The inference of a defect is permissible whenever the plaintiff has introduced evidence that would exclude other causes of the accident."); *Union Ins. Co. v. RCA Corp.*, 724 P.2d 80, 83 (Colo. App. 1986)(allowing circumstantial evidence because, in part, the subject TV was destroyed in the fire). A close analysis of these six cases demonstrates that the Restatement (Third) § 3 should not be applied here. Thus, this Court should not allow the jury to infer that Plaintiff's claimed injury was caused by a product defect and, as a result, should grant this Motion for Judgment as a Matter of Law.

Restatement (Third) § 3 states:

> It may be inferred that the harm sustained by the plaintiff was caused by a product defect existing at the time of sale or

---

121:25-122:7.] This, respectfully, is not correct. In fact, Toyota dedicated over 5 pages to that very topic. [Dkt. 272, at pp. 9-14.] To be clear, Toyota has always maintained, and presently maintains, an objection to the application of the Malfunction Theory and the Restatement (Third) § 3.

distribution, without proof of a specific defect, when the incident that harmed the plaintiff:

(a) was of a kind that ordinarily occurs as a result of product defect; and

(b) was not, in the particular case, solely the result of causes other than product defect existing at the time of sale or distribution.

The comments to the Restatement (Third) § 3 offer guidance with respect to its application. Comment b, for example, explains that this section typically applies only "when the product unit involved in the harm-causing incident is lost or destroyed in the accident," rendering direct evidence of the specific defect unavailable. Restatement (Third) § 3, cmt. b (emphasis added); s*ee, e.g., Dansak v. Cameron Coca-Cola Bottling Co.*, 703 A.2d 489, 496 (Pa. Super. Ct. 1997) (soda bottle was thrown away through no fault of the parties); *Union Ins. Co.*, 724 P.2d at 83 (the subject TV was destroyed in the fire). Because Plaintiff has not established these elements, the jury should not be permitted to infer the existence of a defect. *Olivero*, 291 F. Supp. 3d at 1224.

First, Plaintiff failed to establish that his injuries were "a kind that ordinarily occurs as a result of product defect." Restatement (Third) § 3(a). In *Olivero*, the court ultimately found this element satisfied because, in part, Trek's own literature supported the principle that "carbon fiber can conceal a flaw and then suddenly fail." *Olivero*, 291 F. Supp. 3d at 1223. Similarly, in *Heikkila*, the court allowed circumstantial evidence because the "[d]efendant's own experts appear to agree with . . . the theory that if the pistol discharged when it hit the ground, it was not operating as it should have operated." *Heikkila*, 2023 WL 2375082, at *3. Here, by contrast, it is undisputed that there was a power interruption

and that the airbags, by design, <u>do not deploy without power</u>.[4] Thus, Plaintiff's injuries, which were allegedly caused by the nondeployment of an airbag, were not "a kind that ordinarily occurs as a result of product defect" because the airbag did not "fail[] to perform its manifestly intended function." Restatement (Third) § 3 cmt. b. Plaintiff may argue that the nondeployment of the airbags is not the claimed defect but, rather, the power interruption is the claimed defect. Plaintiff, however, introduced no evidence to establish that a power interruption "ordinarily occurs as a result of product defect." To the contrary, a power interruption commonly occurs in the absence of a defect; i.e., when a vehicle is turned off.[5]

Second, Plaintiff failed to establish that "the incident that harmed the plaintiff . . . was not, in the particular case, solely the result of causes other than product defect existing at the time of sale or distribution." Restatement (Third) § 3(b).  "The inference of a defect is permissible whenever the plaintiff has introduced evidence that would exclude other causes of the accident." *Weir*, 811 F.2d at 1392. While it may be true that Plaintiff "need not definitively . . . rule out alternative causes," Plaintiff must present "evidence from which a reasonable jury could conclude it is more likely than not that the accident did not result solely from something other than a manufacturing defect." *Olivero*, 291 F. Supp. 3d at 1224. Here, Plaintiff has not eliminated all other potential causes. Instead,

---

[4] Sullivan Trial Tr., 09/05/2024 (Day 3) at 171:6-172:12.

[5] A significant portion of Plaintiff's evidence revolved around the Vehicle Control History ("VCH") data and the Diagnostic Trouble Codes ("DTCs"). Analysis of the VCH data was intended to demonstrate when the power was <u>restored</u>: before the pole strike or after the pole strike. Resolution of this issue is not required for this Motion. It is undisputed that the airbags did not deploy due to lack of power <u>and</u> that airbags do not deploy without power. [Sullivan Trial Tr., 09/05/2024 (Day 3) at 171:6-172:12.] Thus, the airbags did not "fail[] to perform [their] manifestly intended function" under Plaintiff's theory. Finally, it is undisputed that the DTCs cannot be triggered by occupant interaction. Sullivan Trial Tr., 09/06/2024 (Day 4) at 14:22-25.

Plaintiff's expert, Peter J. Sullivan, purports to have ruled out only <u>one cause</u>: occupant interference.[6] After ruling out this <u>singular potential cause</u>, Mr. Sullivan makes the bold proclamation that he ruled out all potential causes, other than product defect.[7] Mr. Sullivan makes this statement despite the fact that he never tested the Airbag Control Module ("ACM"), nor did he inspect the ACM's wiring.[8] Thus, Mr. Sullivan offers no credible evidence to support his conclusion that the only possible cause is product defect.

Finally, Plaintiff cannot prove that the Restatement (Third) § 3 should apply because the relevant portions of the subject vehicle were neither lost nor destroyed. Indeed, Plaintiff did not introduce <u>any evidence</u> supporting his argument that the relevant components of the vehicle were destroyed. Instead, Plaintiff presented <u>hours and hours</u> of testimony from Jodie Immell, Paul Lewis, and Peter Sullivan about the extensive data pulled from the vehicle. Critically, Mr. Sullivan admitted that the ACM, which is housed between the two front seats, was not destroyed.[9] Mr. Sullivan further admitted that he neither powered up nor tested the ACM, despite the fact that he could have done so.[10] Finally, Mr. Sullivan admitted that the wiring harness, which was damaged in the accident,

---

[6] The testimony provided by Mr. Sullivan was, to say the least, unreliable. Indeed, Mr. Sullivan admitted that his DTC testing resulted in a 60% error rate. [Sullivan Trial Tr., 09/06/2024 (Day 4) at 14:12-21.] Despite having the opportunity to do so, Plaintiff never rehabilitated Mr. Sullivan on this point. Put another way, this testimony does not provide a "legally sufficient evidentiary basis" for the jury to find in Plaintiff's favor. FED. R. CIV. P. 50(a)(1).

[7] Sullivan Trial Tr., 09/05/2024 (Day 3) at 186:12-187:17; Sullivan Trial Transcript (Day 4) at 71:4-24.

[8] Sullivan Trial Tr., 09/06/2024 (Day 4) at 21:22-22:22.

[9] Sullivan Trial Tr., 09/05/2024 (Day 3) at 134:20-135:3.

[10] Sullivan Trial Tr., 09/06/2024 (Day 4) at 21:22-22:12.

healed itself, allowing for testing.[11, 12] At no point did any expert testify that "catastrophic damage" prevented their testing or analysis. Thus, the application of Restatement (Third) § 3 would be inappropriate here.

Without the benefit of Restatement (Third) § 3, Plaintiff's claim fails in its entirety. None of the relevant cases demand a different result. As noted in *Heikkila*, "the decision to permit circumstantial evidence depends on the facts of a particular case." *Heikkila*, 2023 WL 2375082, at *3. *Hauck v. Michelin N. Am., Inc.,* a 2004 case from this District, is instructive. There, Judge Figa refused to allow circumstantial evidence in a case where the plaintiff was injured in an accident allegedly caused by tire tread separation. *Hauck*, 343 F. Supp. at 979.

The plaintiff filed suit against Michelin North America, alleging that the subject tire was defective. *Id.* Plaintiff's expert opined that the separation occurred as a result of an "adhesion defect," but admitted that he could not "specify the precise cause of the adhesion defect." *Id.* Nonetheless, the plaintiff urged the court to allow proof of defect through circumstantial evidence. *Id.* at 988. The court rejected the plaintiff's request because the tire was neither destroyed nor missing, the tire had been examined by the plaintiff's expert, but the plaintiff's expert "never performed testing on a tire to determine the cause of belt or tread detachment." *Id.* at 982. Here, like in *Hauck*, the subject vehicle is neither destroyed nor missing, the vehicle has been examined by Plaintiff's experts,

---

[11] Sullivan Trial Tr., 09/05/2024 (Day 3) at 217:25-218:14.

[12] Plaintiff may argue that the RAV4's Skid Control Module, which is the anti-lock brake module, could not be downloaded. [Sullivan Trial Tr., 09/05/2024 (Day 3) at 155:20-156:5.] But Mr. Sullivan later admitted that the module "healed itself," and Sullivan was able to download the data from the module. [Sullivan Trial Tr., 09/06/2024 (Day 4) at 218:4-219:14; Sullivan Trial Tr., 09/06/2024 (Day 4) at 21:18-21.]

Plaintiff's experts conducted extensive testing, but Plaintiff's experts failed to test the ACM. Thus, the same result should follow. Despite the foregoing, and despite the fact that Mr. Sullivan spent countless hours and earned over $200,000.00 for his "testing,"[13] neither Plaintiff nor his experts can identify any specific defect. Put simply, circumstantial evidence, and an inference of defect, is inappropriate in a case like this.

      b. <u>There is No Evidence that the 2017 RAV4 was Defective When it Left Toyota's Control.</u>

Plaintiff offered <u>no evidence whatsoever</u> regarding the condition of the Toyota RAV4 when it left Toyota's control. In fact, other than a single stipulation regarding maintenance, Plaintiff introduced no evidence about the vehicle from the time it was manufactured by Toyota to the date of the accident. Plaintiff, however, may not rely on an inference to establish that a "<u>defect existed at the time of sale or distribution</u>." Restatement (Third) § 3 cmt d (emphasis added). Thus, direct evidence is required to establish this element. Yet, Plaintiff presented none. Indeed, Plaintiff presented no evidence, whether direct, circumstantial, inferential or otherwise, regarding the RAV4's condition when it left Toyota's control or regarding the RAV4's condition during the year between the date of purchase and the subject accident.

For example, Plaintiff failed to introduce evidence showing that neither Mr. Bender, nor anyone else, interfered with the ACM or with the wiring in the vehicle. Moreover, the evidence produced by Plaintiff demonstrates that the vehicle had been driven over 18,000 miles from the date it was purchased to the date of the accident.[14] But there is no evidence about the vehicle over those 18,000 miles. This evidence <u>cannot be inferred</u> but, instead,

---

[13] Sullivan Trial Tr., 09/06/2024 (Day 4) at 60:3-9; 69:22-70:7.

[14] Exhibit 73, at p. 1.

must be direct. Restatement (Third) § 3 cmt d. Put simply, Plaintiff failed to establish that the RAV4 was defective when it left Toyota's control. *Union Ins. Co.*, 724 P.2d at 83 (allowing circumstantial evidence because, in part, "plaintiff introduced evidence that, from the time [he] unpacked the television from its factory carton, it was used normally and neither disturbed internally nor abused."). Thus, judgment as a matter of law is warranted.

Plaintiff may argue that the parties stipulated that "improper maintenance did not cause or contribute to the subject accident or the non-deployment of the RAV4's safety restraint systems on the day of the crash." But the fact that the subject vehicle was properly maintained does not prove that the RAV4 was "defective when it left Toyota's control." Indeed, routine oil changes are entirely unrelated to non-deployment of the RAV4's safety restraint systems, and Plaintiff has neither argued nor substantiated otherwise.

      c.   <u>There is No Evidence that any Claimed Defect Caused Plaintiff's Injuries, Damages, or Losses.</u>

There is no legitimate dispute that Wesley Nelson was injured in the car accident on October 25, 2018. However, he completely failed to demonstrate a link between any alleged product defect and his injuries. As outlined above, it is undisputed that the Plaintiff cannot identify a specific defect in the product. Instead, the Plaintiff resorts to the Restatement (Third) § 3, attempting to prove defect through circumstantial evidence. Yet, the Plaintiff has fallen short of the required burden under this standard. Without identifying a specific defect, and without establishing the requirements of the Restatement (Third) § 3, Plaintiff cannot establish that his injuries were caused by any defect, rendering his claim unsubstantiated.

## IV.    CONCLUSION

For the reasons stated above, Toyota respectfully requests that the Court grant this Motion and enter judgment in its favor.

Dated: September 10, 2024                         Respectfully submitted,


                                                  *s/ Clarissa M. Collier*
                                                  Christina M. Trotz, #44873
                                                  Evans Fears Schuttert McNulty Mickus
                                                  3900 E Mexico Avenue, Suite 820
                                                  Denver, CO 80210
                                                  Telephone: (303) 656-2199
                                                  ctrotz@efsmmlaw.com

                                                  Clarissa M. Collier, #40374
                                                  Wheeler Trigg O'Donnell LLP
                                                  370 Seventeenth Street, Suite 4500
                                                  Denver, CO 80202
                                                  Telephone: 303.244.1800
                                                  Facsimile: 303.244.1879
                                                  collier@wtotrial.com

                                                  Tanya B. Scarbrough
                                                  Kurt C. Kern
                                                  Katherine E. Freeman
                                                  NELSON MULLINS RILEY &
                                                  SCARBOROUGH LLP
                                                  5830 Granite Parkway, Suite 1000
                                                  Plano, TX 75024
                                                  Telephone: 469.484.6100
                                                  Facsimile: 469.828.7217
                                                  tanya.scarbrough@nelsonmullins.com
                                                  kurt.kern@nelsonmullins.com
                                                  kate.freeman@nelsonmullins.com

                                                  *Attorneys for Defendant Toyota Motor
                                                  Corporation*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 10, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following email addresses:

- **W. Randolph Barnhart**
  randy@haileyhartlaw.com, kelly@haileyhartlaw.com, valle@haileyhartlaw.com

- **Clarissa M. Collier**
  collier@wtotrial.com, gregory@wtotrial.com

- **Michael O'Brien Keating**
  mkeating@keatingwagner.com, tess@keatingwagner.com, deborah@keatingwagner.com, Leslie@keatingwagner.com, hannah@keatingwagner.com, cdolven@keatingwagner.com

- **Kurt C. Kern**
  kurt.kern@nelsonmullins.com, karen.kase@nelsonmullins.com, kelli.spencer@nelsonmullins.com

- **Deirdre Elizabeth Ostrowski**
  deo@keatingwagner.com, tess@keatingwagner.com, deborah@keatingwagner.com, Leslie@keatingwagner.com, hannah@keatingwagner.com, cdolven@keatingwagner.com

- **Tanya S. Scarbrough**
  Tanya.Scarbrough@nelsonmullins.com, daniel.permenter@nelsonmullins.com

- **Michael Alexander Zimmerman**
  alex@hzinjurylaw.com, alex.zimmerman32@gmail.com, lori@hzinjurylaw.com

- **Katherine E. Freeman**
  kate.freeman@nelsonmullins.com

- **Christina M. Trotz**
  ctrotz@efsmmlaw.com

*s/ Megan A. Gregory*